# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**GARY AARON COBLE,**

     Petitioner,

v.

                                                 Civil Action No. **3:19CV509**

**B. KANODE,**

     Respondent.

## MEMORANDUM OPINION

Gary Aaron Coble, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1)[1] challenging his convictions in the Circuit Court for the County of Northampton, Virginia ("Circuit Court"). In his § 2254 Petition, Coble argues entitlement to relief based upon the following claims:

> **Claim One:** (a) Coble's rights under the Fifth Amendment have been violated in that "[n]o person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process," (§ 2254 Pet. 6);
> (b) Coble's rights under the Sixth Amendment have been violated in that he had the "[r]ight to have assistance of counsel for his defense," (*id.*); and,
> (c) Coble's rights under the Fourteenth Amendment have been violated in that "[n]o person shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." (*Id.*)

> **Claim Two:** Trial counsel rendered ineffective assistance by (a) "refus[ing] to investigate [the] elements of the case which may have been beneficial to [Coble's] case," (b) "[f]ailing to move to suppress [Coble's] confession as 'fruit from a poisonous tree,'" and (c) "[n]ot having [a] mental evaluation performed, resulting in prejudice against [Coble] in his defense." (*Id.* at 9.)

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation, and spelling in the quotations from Coble's submissions.

Claim Three:  Coble's due process rights were violated because (a) "the Commonwealth's prosecution received a coerced plea from [Coble]," and (b) at sentencing, the prosecutor "show[ed] an unduly warranted photo of the victim," which was "only used to influence the Court's judgment upon sentencing," and the prosecutor presented "the Commonwealth's witness statements, . . . which were first fabricated [and] then inconsistent to each other." (*Id.* at 12.)[2]

Claim Four:  "[Coble] asserts a categorical constitutional violation after [the] prosecution's improper conduct, [including] remarks that were merely personal accusations, assumptions, and defamation at sentencing" and the presentation of "[f]alse testimony of witnesses." (*Id.* at 15.)

---

[2] In providing supporting facts for Claim Three, Coble also states, *inter alia*: "Petitioner asserts his denial of any involvement in the crime in which he is being detained for." (§ 2254 Pet. 13.) Coble provides no further explanation or supporting facts for this assertion. Even if the Court generously construed this statement as asserting a claim of actual innocence, such a claim fails. As an initial matter, it is unclear whether habeas petitioners may raise freestanding actual innocence claims. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[The Supreme Court has] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citation omitted)). Nevertheless, "[c]laims of actual innocence, whether presented as freestanding ones, or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). Furthermore, actual innocence means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Even under the more lenient standard for gateway actual innocence claims, Coble may obtain review of his claims "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (omission in original) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Here, Coble fails to direct the Court to any evidence, let alone new reliable evidence of his innocence. Therefore, if the Court generously construes Coble's conclusory assertion as a claim of actual innocence, the Court need not proceed to the second step of the inquiry because Coble fails to proffer any new reliable evidence of his innocence. *See Feaster*, 56 F. Supp. 2d at 610.

Respondent moves to dismiss on the grounds that Coble's claims are either procedurally defaulted and barred from review here, or that they lack merit. (ECF No. 6.) Coble has responded. (ECF No. 10.) For the reasons set forth below, the Motion to Dismiss (ECF No. 6) will be GRANTED. Claim One (a) and (c), Claim Three (b), and Claim Four will be DISMISSED as procedurally defaulted, and the remaining claims will be DISMISSED for lack of merit.

## I. PROCEDURAL HISTORY

On June 9, 2014, Coble pled guilty to one count of second-degree murder, one count of use of a firearm in the commission of a felony, and one count of possession of a firearm after having been previously convicted of a violent felony. (ECF No. 8–1, at 1.) The Circuit Court sentenced Coble to an active sentence of thirty-three years of incarceration. (*Id.* at 3.)

Coble appealed. (*See* ECF No. 8–2, at 1.) On appeal, Coble argued that "the trial court erred when it sentenced him to an active sentence of thirty-three years." (*Id.*) On December 29, 2015, the Court of Appeals of Virginia denied the petition for appeal. (*Id.*) Thereafter, on December 7, 2016, the Supreme Court of Virginia refused the petition for appeal. (ECF No. 8–3, at 1.)

On August 21, 2017, Coble filed a petition for a writ of habeas corpus in the Circuit Court. (ECF No. 8–4, at 1.) In Coble's state habeas petition, he raised the following claims for relief:

1. Ineffective Assistance of Counsel:
   (a) Counsel said Coble had no defense because he confessed, but Coble did not confess;
   (b) Counsel said Coble needed a professional to speak for him in Court;
   (c) Counsel failed to meet with Coble when requested;
   (d) Counsel failed to give Coble a full motion of discovery, only a suggestion to plea out;
   (e) Counsel failed to respond to questions asked about the evidence discovered, and said that he would also like to know this information;
   (f) Counsel did not dispute the evidence given by the prosecution;
   (g) Counsel withheld evidence which could have proven testimony was false;
   (h) Counsel did not stop the prosecutor from defaming Coble in court;

(i)      Counsel allowed statements to be used from incredible witnesses;

(j)      Counsel did not argue for a mental evaluation diagnosis from Central State, and Coble was never given one;

(k)      Counsel did not present statements given in presentence report and allowed prosecution to downplay the violence Coble had been subjected to;

(l)      Counsel was running in an election for office of prosecutor at the time he was to represent Coble and obviously did not have Coble's best interest in mind;

(m)      Counsel has failed to respond to notarized letters requesting documents since Coble has been in jail. Coble did not receive this information until after he wrote to the Virginia State Bar;

(n)      On appeal, counsel failed to argue that counsel had a conflict of interest and that the prosecution failed to provide exculpatory material; and

(o)      Counsel had a conflict of interest because counsel's law firm was being investigated by the IRS, and counsel's partner and spouse had been accused of misappropriating client funds. Had Coble been aware of this conflict of interest, he would have asked for new counsel.

2. Due Process:

     (a)      Coble was not given counsel when requested at interrogation in violation of the 6th Amendment right to counsel. Instead Coble was threatened that the judge would be told that he was not cooperating and that he was hiding something; and

     (b)      Coble was not given up to, but no more than, 180 days of a mental evaluation by the Court. No diagnosis was given when Coble was sent to Central State Hospital. Coble's traumatic brain injuries were downplayed.

3. Prosecutorial Misconduct:

     (a)      Prosecutor used false testimony without facts;

     (b)      Prosecutor used incredible witnesses and statements;

     (c)      Defamation of character[;]

     (d)      Prosecutor used assumptions, accusations, and defamation in order to get the maximum sentence; and

     (e)      Prosecutor used a family member of the victim with a badge to make negative remarks toward Coble to prejudice him in the eyes of the Court.

(ECF No. 8–5, at 2–3.) On June 26, 2018, the Circuit Court dismissed the petition, concluding that Claims 2(a)–(b) and 3(a)–(e) were barred pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Coble could have raised, but failed to raise, these claims on direct appeal, and that Claims 1(a)–(o) lacked merit. (*Id.* at 5–22.)

Coble appealed to the Supreme Court of Virginia. (*See* ECF No. 8–7, at 1.) On May 24, 2019, the Supreme Court of Virginia refused the petition for appeal. (*Id.*) Thereafter, Coble filed the instant § 2254 Petition in this Court. (§ 2254 Pet. 1.)

## II. COBLE'S MOTION TO AMEND RESPONSE

After filing his Response to Respondent's Motion to Dismiss, Coble filed a "Motion to Amend Response of Dismissal of Federal Habeas" ("Motion to Amend Response"). (ECF No. 11.) In Coble's motion, he requests that the Court consider additional case law and arguments in support of his Response, and, in his motion, he includes the additional case law and arguments that he wishes to have the Court consider. (*See id.* at 1–2.)

Coble's Motion to Amend Response (ECF No. 11) will be GRANTED. The Court will consider the additional case law and arguments, which are set forth in Coble's motion, in its analysis of Coble's § 2254 Petition and Respondent's Motion to Dismiss.

## III. EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has

used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S.

at 735 n.1).[3] The burden of pleading and proving that a claim is procedurally defaulted rests with

the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted).

Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation

of federal law," or a showing that "failure to consider the claims will result in a fundamental

miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501

U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

### A.    Claims Barred From Review Here

Claim One (a) and (c) here are broad and conclusory claims in which Coble asserts that his

rights under the Fifth and Fourteenth Amendments were violated without providing any further

explanation or supporting facts. (*See* § 2254 Pet. 6.)  Respondent contends that these claims

encompass the claims that Coble raised in his state habeas, which the Circuit Court found were

procedurally defaulted pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974),

because Coble could have raised, but failed to raise, these claims at trial and on direct appeal.

(Mem. Supp. Mot. Dismiss 8, ECF No. 8.)  Given the broad nature of these claims, it is unclear to

the Court whether Coble raised Claim One (a) and (c) in his state habeas petition.  Regardless,

even if Coble failed to raise these claims in his state habeas petition, if he now attempted to do so,

these claims would also be barred pursuant to the rule in *Slayton*, because Coble could have raised,

but failed to raise, these claims on direct appeal.

With respect to Claim Three (b) here, Coble raises this claim for the first time in the present

§ 2254 Petition.  If Coble now attempted to raise Claim Three (b) in a state habeas petition, the

petition would be barred as successive pursuant to Va. Code Ann. § 8.01–654(B)(2), and the claim

---

[3] Under these circumstances, even though the claim has not been fairly presented to the Supreme
Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342,
364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

would be barred pursuant to the rule in *Slayton*, because Coble could have raised, but failed to raise, this claim on direct appeal. As to Claim Four here, Coble raised this claim in his state habeas petition in the Circuit Court, and the Circuit Court found that this claim was procedurally defaulted pursuant to the rule in *Slayton*, again concluding that Coble could have raised, but failed to raise, this claim at trial and on direct appeal. (*See generally* ECF No. 8–5.)

Both Va. Code Ann. § 8.01–654(B)(2) and *Slayton* constitute adequate and independent state procedural rules when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Claim One (a) and (c), Claim Three (b), and Claim Four are defaulted unless Coble demonstrates cause and prejudice to excuse his default or a fundamental miscarriage of justice. Coble fails to present any arguments to excuse his default. Therefore, Coble fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of justice. Accordingly, Claim One (a) and (c), Claim Three (b), and Claim Four are defaulted and barred from review here, and they will be DISMISSED.

### B.    Claims with Alleged Cause for Coble's Default

Coble raises Claim One (b) and Claim Two (b) for the first time in his present § 2254 Petition. Thus, Claim One (b) and Claim Two (b) are defaulted. Respondent argues that *Martinez v. Ryan*, 566 U.S. 1 (2012), does not apply here to excuse Coble's default. (Mem. Supp. Mot. Dismiss 10–11.) Nevertheless, because Coble had no counsel at his "initial-review collateral proceeding," *Martinez*, 566 U.S. at 16, and because his claims clearly lack merit, the Court will address the merits of Claim One (b) and Claim Two (b).[4]

---

[4] The Court will also address the merits of Claim Two (a) and (c) and Claim Three (a), which Respondent agrees are exhausted because Coble raised these claims in his state habeas petition and the Circuit Court addressed these claims on the merits.

## IV. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## V. COBLE'S GUILTY PLEA

### A. Factual Basis for Plea and Guilty Plea Proceedings

In Coble's plea agreement, the Commonwealth agreed to amend the first-degree murder charge to a second-degree murder charge. Plea Agreement, *Commonwealth v. Coble*, No. CR1300119–01, CR1300119–02, CR1300119–04, at 1–2 (Va. Cir. Ct. filed June 9, 2014). Additionally, the parties agreed that the "plea agreement is the total agreement between the parties and there have been no other inducements, promises, threats or coercion of any kind

imposed upon the Defendant or suggested to the Defendant by the attorney for the Commonwealth or any agent of the Commonwealth." *Id.* at 2.

Before the Circuit Court accepted Coble's guilty plea, the Circuit Court conducted a plea colloquy to ensure that Coble was entering his plea knowingly, freely, and voluntarily. During the guilty plea hearing, Coble agreed that he understood the charges against him. (ECF No. 8–6, at 35.) Coble also agreed that he had discussed with his counsel what the Commonwealth would need to prove before he could be found guilty and his possible defenses to the charges. (*Id.* at 35–36.) Additionally, Coble agreed that he was "entering these pleas of guilty freely and voluntarily." (*Id.* at 36–37.) Coble also agreed that he was "entering the pleas of guilty because [he was] in fact guilty of the crimes charged." (*Id.* at 37.)

Further, Coble agreed that he understood that by pleading guilty he gave up his rights to a jury trial, to confront witnesses, to remain silent, and to appeal. (*Id.* at 37–38, 41.) When asked if "anyone connected with [his] arrest and prosecution, such as the police or the Commonwealth's attorney, or any other person, in any manner threatened [him] or forced [him] to enter this plea of guilty," Coble responded: "No, sir." (*Id.* at 38–39.) Additionally, when asked if he was satisfied with his counsel's services, Coble responded in the affirmative. (*Id.* at 41.) Coble also indicated that he understood that the maximum sentencing range for the three offenses was forty-eight years of imprisonment, and that there was a mandatory minimum sentence of eight years of imprisonment for the two firearms charges. (*Id.* at 39.)

As the factual basis for the plea, the Commonwealth proffered the following statement of facts at Coble's guilty plea hearing:

> What happened is this: Mr. Elliott and his uncle Roy Elliott, who is in court today, had very recently rented and moved into the house which ultimately became the scene of the crime. Those two men along with Mr. Coble and Mr. Coble's girlfriend Teresa Howard, who is also in the courtroom today, had by the time of the shooting been on a -- I'll call it a drinking binge for two-and-a-half days.

They were all very highly intoxicated. Mr. Elliott -- Bryan Elliott, the victim, was over a .25 according to the medical examiner. And we can be certain that the others were not far off.

At some point on the 31st, Bryan Elliott began to kind of needle the defendant, according to the best evidence we have, about his -- that is to say Bryan Elliott's supposed former relationship with Teresa Howard. At some point the defendant, Mr. Coble, left the house; and at some later point, he returned. The available witnesses on this point are Roy Elliott and Teresa Howard, who if you recall were both profoundly under the influence.

But they gave various estimates about how long Coble was gone, ranging from a low of twenty or twenty-five minutes up to a high of forty-five minutes -- that came from Ms. Howard -- to a high of two or more hours -- that came from Mr. Elliott. As I say, both of them -- [t]heir estimates were the wide range as the court has seen, but you have to consider the source.

In any event, Mr. Coble returned. He came -- The house is oriented so that the front door faces Seaside Road. But Mr. Coble returned and came through the back door. He walked into the living room where Bryan Elliott and Roy Elliott were sitting on two ends of a couch with Teresa Howard in the middle. Coble, the defendant, walked up and from a fairly short range -- I mean several feet, but a fairly short range produced a nine millimeter semi-auto pistol -- automatic pistol -- and fired one shot at Bryan Elliott hitting him in the lower forehead, basically right between the eyes. It's possible that Bryan Elliott was beginning to stand or that he had not yet stood. But at any rate, he was killed instantly.

Teresa Howard became terrified. We got this both from her and actually from Mr. Coble who was interviewed a couple of times eventually. She became terrified instantly. Understandably fearful in particular that Coble would now shoot her. Mr. Coble assured Ms. Howard that he would not shoot her. However, her clothing was soaked in blood. She showered. They gathered up her bloody clothing. There was some discussion about how to dispose of -- how to cover up the crime basically. Ultimately -- I mean there was some talk about burying the body and so on.

But, anyway, ultimately they decided to go to various places to attempt to establish an alibi. They did go to a few places, including Corner Mart in Cape Charles, where there is video and they were seen there; and at the home of a man named Ray Taylor, where the defendant dropped off Teresa Howard and Roy Elliot for some period of time. He left but picked them up later having disposed of the gun and the bloody clothing.

I should say all this evidence is coming from several sources. The scene of the crime. I can show the court some photographs. Both Roy Elliott and Teresa Howard were interviewed and Mr. Coble was interviewed and say different things, but that's where this information is coming from.

Thereafter they returned to the scene of the crime; and Teresa Howard at that time called 911, after which the investigation began. This was certainly hours after the shooting.

The story given by all three of them was that they had for some reason left; and when they returned, they found that Bryan Elliott had been shot and killed, presumably by drug dealers. Mr. Elliott -- Bryan Elliott had in fact left apparently, according to one or two of the witnesses, and acquired some crack cocaine, which he

brought back and used. But in any event, the allegation was that while they were gone, Mr. Elliott had been shot and killed.

This was not viewed by Lieutenant Hallett and the other police officers as very credible, especially after nine millimeter bullets and a shell casing were found in Coble's truck -- the defendant's truck -- which was parked at the house. Additionally, a nine millimeter shell casing was found on the couch where Mr. Elliott had been killed. And a nine millimeter bullet was found imbedded in a wall behind -- or to the side really of Bryan Elliott. Nevertheless, no arrest was made at that time.

However, within a couple of days, both Roy Elliott and Teresa Howard had come forward and independently had given accounts that are roughly consistent with what I've told the court today. As I said, they were both under the influence and there [were] some inconsistencies; but for the most part consistent with what I've told the court today.

Partly due to the help of Teresa Howard, the defendant, who had been hiding out in Hare Valley, came forward and turned himself in. He had insisted that he would deliver himself only to Sheriff Doughty, who is present in court today, and to Lieutenant Hallett, who was the lead investigator in the case.

[Coble] spontaneously made a remark to the sheriff that he was sorry for what happened to Bryan but that he got what he deserved. He said that Bryan was poking and pushing him all day. Remember I said he had been needlingly him and so on. And that -- again, that he got what he deserved. He also said he did not intend for it to happen like it did.

The defendant also agreed to help the police find the murder weapon, which so far had not been found. And he did so by giving a very detailed description of how the place looked where he discarded the gun. He was not able to say exactly where it was or reproduce his tracks, but he did describe very carefully where it was. And, in fact, the police eventually did find it. Again, I think -- Yeah. I think Sheriff Doughty first saw it and it was taken into possession by Lieutenant Hallett. And it was found exactly as Coble had described it would look and exactly where he said it would be in terms of the appearance.

Mr. Coble was interviewed a couple of times; and he never precisely said, I have to say to the court, that he had shot Mr. Elliott. Instead he would say things like he had blacked out. And after the shot which killed Elliott was fired, he came to his senses and realized he was holding the gun. Stuff like that. That was kind of his theme on that. We did come into possession of a letter written by the defendant in which he explicitly confessed to shooting the victim between the eyes.

(*Id.* at 44–49.) With respect to the firearm at issue in the case, the Commonwealth also proffered:

So the next thing I would offer to the court -- Well, I'll advise the court that the firearm to which the defendant directed the police has been positively identified by the Department of Forensic Science as being the gun that fired the bullet found in the wall next to Elliott and also as being the gun that ejected the cartridge casing found on the couch on which Elliot was killed. It's a right-hand eject gun.

And also the casing found in the truck. Remember I mentioned it was a nine millimeter casing that was found and the Department of Forensic Science,

Christopher Luckie specifically, also found that the cartridge had been shot by that gun.

(*Id.* at 51–52.) Further, the Commonwealth proffered:

> Remember I told you while Mr. Coble could not actually guide the police to where the gun was after he had hidden it, he did give a very detailed description; and the police -- and you'll see a series of -- it looks five photographs. He described it as having posts along the side and so on. You'll see. And, again, this is coming from farther to closer -- the last one -- showing the gun as recovered.
>     He said it would be found on top of the bag which had the clothing . . . . The clothing that was saturated with blood from Teresa Howard. That was in fact in the bag as well.

(*Id.* at 54.)

The Circuit Court found that "the plea of guilty to [the] three charges ha[d] been made freely, intelligently, and voluntarily and made with the understanding of the nature of the charges and the consequences of the plea . . . ." (*Id.* at 43.) Additionally, the Circuit Court accepted the plea agreement and Coble's pleas of guilty, and found Coble guilty as charged. (*Id.* at 60–61.)

## B.    Claim Three (a)

In Claim Three (a), Coble contends that his due process rights were violated because "the Commonwealth's prosecution received a coerced plea from [him]." (§ 2254 Pet. 12.) Coble provides no further supporting argument or facts after the statement of this claim.

In Coble's state habeas petition in the Circuit Court, he challenged the voluntariness of his guilty plea in the context of an ineffective assistance of counsel claim. In rejecting Coble's assertion regarding the involuntariness of his guilty plea, the Circuit Court aptly found:

> At the outset, to the extent the petitioner is arguing counsel's statement undermined the voluntariness of his guilty plea, the Court finds that this claim is without merit. Prior to entering his plea in the instant case, the petitioner informed the trial court under oath that he had discussed the charges and their elements with counsel and understood the charges against him. He agreed that he understood what the Commonwealth needed to prove to find him guilty and that he had enough time to discuss any possible defenses with his attorney. When asked if, after those discussions, he decided for himself to plead guilty he replied, "Yes, I certainly did."

13

He agreed that he was pleadingly guilty freely and voluntarily, and that he was doing so because he was, in fact, guilty.

A petitioner in habeas corpus attacking a guilty plea is bound by his prior declarations at his plea colloquy.

> [T]he truth and accuracy of representations made by an accused as to the adequacy of his court-appointed counsel and the voluntariness of his guilty plea will be considered conclusively established by the trial proceedings, unless the prisoner offers a valid reason why he should be permitted to controvert his prior statements.

*Anderson v. Warden*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981). *Accord Blackledge v. Allison*, 431 U.S. 64, 73–74 (1977). The purpose of this colloquy is to "forestall 'the spin-off of collateral proceedings'" such as this. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888 (quoting *Boykin v. Alabama*, 395 U.S. 238 (1969)); *see also Via v. Superintendent*, 643 F.2d 167 (4th Cir. 1981).

The petitioner has not provided this Court a valid reason to allow him to controvert these sworn statements, and as a consequence he cannot now argue that his attorney's belief that he had confessed caused him to plead guilty. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888. For this reason alone, claim 1(a) should be dismissed.

The Court further finds that this claim is not factually supported by the record because the petitioner *did* make multiple inculpatory statements regarding this offense. As noted by the prosecutor in his proffer, the petitioner told law enforcement that he was sorry for what happened to the victim, that he did not intend for it to happen the way it did, but that the victim got what he deserved. The petitioner also said that he blacked out and, when he regained his senses, he was holding the gun and the victim was dead. Finally, in a letter to his son, the petitioner wrote that he shot the victim "dead between his eyes."

(ECF No. 8–5, at 8–9 (alteration in original) (paragraph numbers omitted).)

Upon review of the Circuit Court's decision and the record in this case, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Coble's terse and conclusory allegations regarding the voluntariness of his guilty plea fail to show that he was coerced into pleading guilty. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). Additionally, Coble's former counsel provided an affidavit in the state habeas proceedings, in which he stated: "The decision to enter into a plea agreement was Mr. Coble's with the advice of counsel after lengthy discussions regarding the possible defenses and mitigating factors." (ECF No. 8–6, at 68.) Furthermore,

Coble's sworn statements during the plea colloquy undercut Coble's contention regarding the voluntariness of his guilty plea. (*See* ECF No. 8–6, at 36–39.) Therefore, upon review of the record in this case, the Court concludes that the Circuit Court's decision was not an unreasonable determination of the facts. *See* 28 U.S.C § 2254(d). For these reasons, Claim Three (a) lacks merit and will be DISMISSED.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Coble that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v.*

*Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

The Court first addresses Claim Two (a) and (c), both of which Coble presented in his state habeas petition, and then addresses Claim Two (b) and Claim One (b), both of which Coble failed to present in his state habeas petition.

### B.     Claim Two (a)

In Claim Two (a), Coble contends that trial counsel rendered ineffective assistance by "refus[ing] to investigate [the] elements of the case which may have been beneficial to [his] case." (§ 2254 Pet. 9.) Specifically, Coble asserts that "had counsel filed [a] motion of discovery for [counsel's] defensive strategy, [counsel] would have learned that an investigation into the evidence . . . could prove beyond [a] reasonable doubt that the defendant was not guilty of the crimes [he was] convicted of." (*Id.* at 9–10.) Then, without providing any further explanation, Coble lists the following evidence, which Coble appears to believe counsel should have investigated:

> Gun residue analysis, blood analysis, crime scene evidence such as: the position of [the] body when first discovered compared to photo of body taken that was in different position; where victim's blood was located and discovered compared to

evidence; any forensic evidence to collaborate entry wound and exit of victim to evidence of bullet hole located beside victim in a wall; witness statements that contradict prosecution's timeframe for which offense to place by defendant [sic].

(*Id.* at 10.)

In rejecting Claim Two (a),[5] the Circuit Court aptly found:

> In claim 1(d), petitioner claims counsel failed to conduct "full" discovery, and in claim 1(e) that counsel failed to investigate the evidence that was discovered. The Court finds that these claims cannot satisfy either prong of the *Strickland* test. At the outset, during his plea colloquy, the petitioner[,] he affirmed he understood that by pleading guilty he was giving up certain constitutional rights, including the right to confront his accusers and the right to defend himself. He agreed that he understood the charges, the elements, what the Commonwealth needed to prove to find him guilty, and he was "entirely satisfied" with counsel's services. Petitioner has not provided this court a reason to allow him to controvert his earlier statements, and he is bound by them in this habeas proceeding. *Anderson*[ *v. Warden of Powhatan Corr. Ctr.*], 222 Va. [511,] 516, 281 S.E.2d [885,] 888 [(Va. 1981)]. For this reason alone, the petitioner's claims fail to satisfy the performance or prejudice prong of the demanding *Strickland* standard.
>
> The Court further finds that, in addition, claim 1(d) is refuted by the record. As noted by counsel, the Northampton County Commonwealth's Attorney's Office maintains an "open file" policy. In light of this policy, the petitioner was actually afforded *more* information than required by the criminal discovery rules alone. *See* Rule 3A:11. In addition, the Commonwealth's Attorney filed a written discovery response in this case, which trial counsel forwarded to the defendant. Under these circumstances, the petitioner has failed to establish a factual basis to support his claim, and claim 1(d) is dismissed. *See Muhammad*[ *v. Warden*], 274 Va. [3,] 18, 646 S.E.2d [182,] 195 [(Va. 2007)] (barring claim under *Strickland* where Muhammad "failed to articulate any factual basis upon which the Court could conclude that the jury did not follow the court's instructions").
>
> With respect to claim 1(e), the Court also finds that petitioner has failed to proffer what information counsel should have investigated further and what additional information would have been discovered upon further investigation. These failures to proffer are fatal to claim 1(e). *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (requiring a *specific, affirmative* showing of what the missing evidence or testimony would have been); *see also Muhammad*, 274 Va. at 19, 646 S.E.2d at 195 (finding petitioner failed to show ineffective assistance where he failed to proffer names of witnesses counsel allegedly should have consulted or what information they could have provided at trial); [*c*]*f. Beaver*[ *v. Thompson*], 93 F.3d [1186,] 1195 [(4th Cir. 1996)] ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been

---

[5] Claim Two (a) herein is Claim 1(d) in Coble's Circuit Court habeas petition.

17

produced."). For all of these reasons claims 1(d) and 1(e) cannot satisfy either prong of the *Strickland* test, and are dismissed.

(ECF No. 8–5, at 12–14 (paragraph numbers omitted).)

As an initial matter, as the Circuit Court aptly noted, during the during the plea colloquy, when asked if he was satisfied with his counsel's services, Coble responded in the affirmative. (ECF No. 8–6, at 41.) Therefore, Coble's present assertions regarding his dissatisfaction with the discovery pursued by counsel are undercut by Coble's sworn statements during the guilty plea proceedings.

The Court notes that unlike in his state habeas petition, here, Coble identifies the evidence that he believes counsel could have learned of if he had filed discovery requests, which would have allowed him to investigate the evidence in the case. (*See* § 2254 Pet. 10.) Regardless, Coble's claim that counsel failed to learn of this evidence because he failed to request discovery or file a motion for discovery is belied by the record. Contrary to Coble's assertion, counsel requested discovery from the Commonwealth. (*See* ECF No. 8–6, at 77–78); *see also* Response to Motion for Discovery, *Commonwealth v. Coble*, No. CR1300119–01, CR1300119–02, CR1300119–04, at 1 (Va. Cir. Ct. filed May 31, 2013.)[6] Moreover, in responding to defense counsel's discovery requests, the Commonwealth, indicated that the evidence that Coble identifies in his present § 2254 Petition was available to counsel. (*See, e.g.*, ECF No. 8–6, at 77–78.) Therefore, contrary to Coble's assertion, counsel did in fact request discovery from the Commonwealth, which would have allowed him to investigate the evidence identified by Coble in his present § 2254 Petition.

---

[6] The Commonwealth's responses to defense counsel's discovery requests are in the state court records. It appears that defense counsel sent his discovery requests directly to the Commonwealth's attorney, rather than filing motions in the Circuit Court because the discovery requests themselves are not in the state court records. Nevertheless, based on the Commonwealth's responses, it is clear that Coble's counsel did in fact request discovery from the Commonwealth.

Because counsel requested discovery and had access to the evidence identified by Coble, Coble

fails to identify any deficiency of counsel or resulting prejudice from counsel's discovery requests.

Accordingly, for these reasons, Coble has failed to demonstrate any deficiency of counsel

or resulting prejudice. Claim Two (a) will be DISMISSED.

## C.    Claim Two (c)

In Claim Two (c), Coble contends that counsel rendered ineffective assistance by "[n]ot

having [a] mental evaluation performed, resulting in prejudice against [Coble] in his defense."

(§ 2254 Pet. 9.) In rejecting Claim Two (c),[7] the Circuit Court aptly found:

> In claim 1(j), the petitioner argues that counsel was ineffective because
> counsel failed to seek a mental evaluation from Central State, and as a consequence,
> the petitioner was never given one. The Court finds this claim is unsupported by the
> record, and cannot form the basis for habeas relief. The record reflects that counsel
> filed two separate motions for psychological evaluations on June 7, 2013 and August
> 8, 2013. Ultimately, moreover, the petitioner had two psychological evaluations, one
> provided by the court and one by a retained evaluator. Under these circumstances,
> the petitioner's claim that trial counsel failed to seek a mental evaluation for him is
> belied by the record, and is dismissed. *See Hedrick*[ *v. Warden of the Sussex I State
> Prison*], 264 Va. [486,] 521, 570 S.E.2d [840,] 862 [(Va. 2002)] (finding habeas
> petitioner had not established deficient performance or prejudice because he failed to
> provide any evidence to support claim).

(ECF No. 8–5, at 15.)

Upon review of the Circuit Court's decision and the record in this case, the Court discerns

no unreasonable application of the law and no unreasonable determination of the facts. *See* 28

U.S.C. § 2254(d)(1)–(2). As the Circuit Court aptly found, Coble's claim that he did not receive

a psychological evaluation is belied by the record. (*See, e.g.*, ECF No. 8–6, at 68.) Specifically,

contrary to Coble's assertion that no "mental evaluation" was performed, (§ 2254 Pet. 9), Coble

had two psychological evaluations. (*See* ECF No. 8–6, at 68.) Because counsel requested, and

Coble received, two psychological evaluations, Coble fails to identify any deficiency of counsel

---

[7] Claim Two (c) herein is Claim 1(j) in Coble's Circuit Court habeas petition.

or resulting prejudice from his receipt of the two psychological evaluations. Because Coble demonstrates neither deficiency of counsel nor resulting prejudice, Claim Two (c) will be DISMISSED.

### D.     Claim Two (b)

In Claim Two (b), Coble contends that counsel rendered ineffective assistance by "[f]ailing to move to suppress [Coble's] confession as 'fruit from a poisonous tree.'" (§ 2254 Pet. 9.) Coble asserts that "during interrogation, defendant requested counsel, but was told by the investigator that the judge would be notified that defendant was 'not cooperating' and that defendant was 'hiding something,' thereby resulting in statements made by coercion . . . ." (*Id.*) Coble argues that "[h]ad counsel been effective in his duties, after directly listening to the interrogation recordings, a motion to suppress any and all statements where counsel was not present should have been filed in the trial court." (*Id.*)

As an initial matter, Coble's instant allegations are undercut by his sworn statements during the plea colloquy. Specifically, during the during the plea colloquy, when asked if he was satisfied with his counsel's services, Coble responded in the affirmative. (ECF No. 8–6, at 41.) Further, Coble agreed that he was "entering the pleas of guilty because [he was] in fact guilty of the crimes charged." (*Id.* at 37.)

Additionally, Coble fails to demonstrate any prejudice under *Strickland.* To establish prejudice, Coble must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "To determine [Coble's] reasonable likelihood of going to trial, [the Court] must look to the strength of the [State's] case 'inasmuch as a reasonable defendant would surely take it into account.'" *United States v. Swaby*, 855 F.3d 233, 243 (4th Cir. 2017) (citation omitted). Coble must show that a decision to proceed to trial "would have been rational under the circumstances." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir.

2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). "[Coble's] subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Id.* (citation omitted).

Here, if Coble's counsel had filed a successful suppression motion, resulting in the suppression of Coble's confession, there is still overwhelming evidence of Coble's guilt. Therefore, it is not reasonably likely that a defendant, such as Coble, would have rationally proceeded to trial. Specifically, even if Coble's confession was suppressed, two eyewitnesses identified Coble as the shooter, (*see, e.g.*, ECF No. 8–6, at 48), the nine millimeter bullets and shell casings found in Coble's truck matched the nine millimeter bullet and shell casing found at the scene of the shooting (*id.* at 47–48, 51–52), and Coble wrote a letter in which he confessed to shooting the victim "dead between his eyes." (*Id.* at 74.) Thus, even if Coble's statements to law enforcement officers had been suppressed, including his statements that led the police to the firearm used in the shooting, overwhelming evidence of his guilt existed based on the evidence from two eyewitnesses, the evidence connecting Coble to the bullet and shell casing recovered from the scene of the shooting, and a subsequent written confession from Coble. Based on this overwhelming evidence of guilt, a rational defendant would not have risked proceeding to trial. *See Fugit*, 703 F.3d at 260–61 ("[P]roceeding to trial would have been irrational where defendant 'faced overwhelming evidence of her guilt' and 'had no rational defense, would have been convicted and would have faced a longer term of incarceration.'" (quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012))).

Thus, Coble has failed to demonstrate any deficiency of counsel or resulting prejudice with respect to counsel's failure to file a motion to suppress and Coble's decision to plead guilty. *See Strickland*, 466 U.S. at 687, 691; *see also Hill*, 474 U.S. at 59. Accordingly, Claim Two (b) will be DISMISSED.

### E.    Claim One (b)

In Claim One (b), Coble contends that his rights under the Sixth Amendment have been violated in that he had the "[r]ight to have assistance of counsel for his defense." (§ 2254 Pet. 6.) Coble provides no further supporting argument or facts after the statement of this claim, and he fails to explain why he believes that counsel rendered ineffective assistance in this claim. (*See id.*) Coble's terse and conclusory allegations fail to demonstrate deficient performance or prejudice under *Strickland. Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (requiring proffer of mitigating evidence to state claim of ineffective assistance); *see Sanders*, 373 U.S. at 19 (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations").

Moreover, to the extent that Coble intended to argue that the cumulative effect of the ineffective assistance of counsel Coble received itself constitutes an ineffective assistance of counsel claim, such claim lacks merit.

> Pursuant to the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)[,] *cited with approval in United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002). Generally, however, if a court "determine[s] . . . that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." [*United States v.*] *Fields*, 483 F.3d [313,] 362 [(5th Cir. 2007)]. To satisfy this requirement, such errors must "so fatally infect the trial that they violated the trial's fundamental fairness." *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004). When "none of [the] individual rulings work[] any cognizable harm, . . . [i]t necessarily follows that the cumulative error doctrine finds no foothold." [*United States v.*] *Sampson*, 486 F.3d [13,] 51 [(4th Cir. 2007)].

*United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (omissions and first, third, fourth, eighth, ninth, and tenth alterations in original). In determining the cumulative effect of any claims of ineffective assistance of counsel, counsel's "acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" *Fisher v. Angelone*,

163 F.3d 835, 853 (4th Cir. 1998) (quoting *Wainright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)).

Here, as discussed above, Coble's other ineffective assistance of counsel claims lack merit and do not constitute constitutional violations. Furthermore, besides the ineffective assistance of counsel claims discussed above, Coble does not present any additional ineffective assistance of counsel claims in his present § 2254 Petition, nor does he present any further supporting argument in Claim One (b) about additional instances of alleged ineffective assistance of counsel. The cumulative effect of meritless claims does not result in a violation of a Coble's constitutional rights. *See id.* Accordingly, Coble fails to demonstrate any cumulative error from his ineffective assistance of counsel claims, and Claim One (b) will be DISMISSED.

## VII. COBLE'S REQUEST FOR EVIDENTIARY HEARING

In Coble's § 2254 Petition, he requests, *inter alia*, that the Court "conduct an evidentiary hearing to resolve any factual disputes raised to the claims in this [§ 2254] Petition . . . ." (§ 2254 Pet. 19.) In determining whether a case warrants an evidentiary hearing, a federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity "to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citing *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000)). A federal court must also consider the standards set forth in 28 U.S.C. § 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474 (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Here, based on a thorough evaluation of Coble's claims and the record before the Court, the Court concludes that Coble's claims are either procedurally defaulted and barred from review

here or without merit. Therefore, the Court concludes that habeas relief under § 2254 is not warranted. Coble's request for an evidentiary hearing (§ 2254 Pet. 19) will be DENIED.

## VIII. CONCLUSION

For the foregoing reasons, Coble's Motion to Amend Response (ECF No. 11) will be GRANTED. Respondent's Motion to Dismiss (ECF No. 6) will be GRANTED. Coble's request for an evidentiary hearing (§ 2254 Pet. 19) will be DENIED. Coble's § 2254 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[8]

An appropriate Final Order shall issue.

_____ /s/ _____

Roderick C. Young
United States Magistrate Judge

Date: March 24, 2020
Richmond, Virginia

---

[8] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Coble fails to meet this standard.